UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X

RALPH FORGIONE,                                                    AMENDED
                                                                   COMPLAINT WITH
                                        Plaintiff,                 JURY DEMAND

            -against-                                              CV-11-5248

THE CITY OF NEW YORK; DEPUTY INSPECTOR
THOMAS KAVANAGH; DR LEA DANE, NYPD
POLICE SURGEON all being sued
In their official and individual capacities,

                                        Defendants.
------------------------------------------------------------------------------X

          The plaintiff RALPH FORGIONE, by his attorneys CRONIN & BYCZEK, LLP, as and for

his complaint against defendants' THE CITY OF NEW YORK; each individually and in their

official capacities as employees of the CITY, respectfully set forth and allege that:

## INTRODUCTION

          1.        This is an action for equitable relief and money damages on behalf of plaintiff

RALPH FORGIONE, (hereinafter referred to as "Plaintiff") who was, and who is prospectively

deprived of his statutory and constitutional rights as a result of the defendants' policies and practices

of discrimination based upon perceived disabilities in the conditions of his employment.   Said

policy was implemented under color of law.

## JURISDICTION AND VENUE

          2.        The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and

2202 to secure protection of and to redress deprivation of rights secured by:

                    (a)        Title I of the Americans with Disabilities Act of 1990, which prohibits

covered employers from discriminating against an employee who is a "qualified individual with a

disability;"

      (b)      The Rehabilitation Act, which prohibits covered employers from discriminating against an employee who is a "qualified individual with a disability;"

      (c)      The Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

3.      The unlawful employment practices, violations of plaintiff's civil rights and tortious acts complained of herein were committed within the Eastern District of New York.

4.      The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; and New York City Administrative Code § 8-502, pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the Plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.      Plaintiff is a male citizen of the United States of America and is over twenty-one (21) years of age, a resident of Nassau County and the State of New York and was an employee of defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the POLICE DEPARTMENT CITY OF NEW YORK (hereinafter referred to as the "NYPD"). For the purposes of this litigation, NYPD may be used interchangeably with Defendant CITY to identify the employer which is Defendant CITY.

## DEFENDANTS

6.      Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities

throughout the State of New York.

7.    Defendant CITY is an employer as defined in the ADA, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.    Defendant THOMAS KAVANAGH (hereinafter "KAVANAGH") at all times relevant to this complaint, was an NYPD Deputy Inspector and Plaintiff's superior officer. At all times relevant, KAVANAGH is sued in his individual and official capacities.

9.    Defendant DANE (hereinafter "DANE") is a physician and at materially relevant times herein, was, and may currently remain, a Physician or Alternate Physician of the Medical Board of the New York City Police Department Medical Division as a Police Surgeon.  DANE is a Defendant to the herein action and is being sued in her Individual and Official Capacity.

## PROCEDURAL REQUIREMENTS

10.    Plaintiff has filed suit with this Court within the applicable statute of limitations period.

11.    Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

12.    On or about June 11, 2010, plaintiff submitted a dual filing with the New York State Division of Human Rights and the EEOC under EEOC case number 520-2010-02584.

13.    On or about August 1, 2011 Plaintiff received a Notice of Right to Sue letter (see Exhibit "A") from the United States Department of Justice.

## BACKGROUND

14.    Plaintiff is a male, currently employed with the New York City Police

Department ("NYPD") holding the rank of Captain.   Plaintiff is a resident of the State of New York, County of Nassau and employed by the NYPD from July 5, 1989 to Present.   Plaintiff went approximately ten years without ever taking one sick day prior to the discriminatory conduct of the Defendants.

15.    On September 28, 2009, Plaintiff was transferred to the 108th Precinct in Queens, and placed under the supervision of Defendant KAVANAGH.  Within six weeks of being transferred, Defendant KAVANAGH began to talk to Plaintiff regarding his personal life and child hood growing up prior to becoming a police officer.

16.    Defendant KAVANAGH, despite Plaintiff having no problems at work, nor suffering from any type of psychological disorder, began to harass Plaintiff regarding his personal family history and told him he needed to see a psychiatrist because he perceived Plaintiff as having a psychological disability.  Plaintiff advised Defendant KAVANAGH that he did not need to obtain any psychological treatment and was able to move up within the ranks of the NYPD from police officer to Captain, without ever suffering from any depression, psychological or emotional tendencies.

17.    Nevertheless, Defendant KAVANAGH told Plaintiff that he needed therapy. Plaintiff immediately complained to Chief Pizutti about Defendant KAVANAGH regarding KAVANAGH's harassment and creation of a hostile work environment.

18.    On or about November 2009 through January 2010, because of the harassment and hostile work environment caused by Defendant KAVANAGH, Plaintiff began to suffer from a urological disorder and asked Defendant KAVANAGH for a reasonable accommodation for time off so that he could take care of his medical issue.  Said request was denied by Defendant KAVANAGH and referred Plaintiff to Chief Pizutti.

19.    On January 6, 2010, Defendant KAVANAGH contacted Captain Steven Ruben and referred to Plaintiff as a "fuck-up".

20.    As a result of Defendant KAVANAGH perceiving Plaintiff as having a mental disability and Defendant KAVANAGH's creation of a hostile work environment, Plaintiff informed Defendant KAVANAGH that he was going to complain to Chief Gomez (KAVANAGH's supervisor) about Defendant KAVANAGH's treatment towards him.

21.    On January 7, 2010, Defendant KAVANAGH harassed Plaintiff by questioning him as to what he was going to say to Chief Gomez and called Plaintiff a "Fuck-up you should fucking retire".

22.    On January 8, 2010 Plaintiff went to Chief Gomez's office and immediately upon arrival Plaintiff was told to leave by Defendant KAVANAGH and go to the NYPD Psychological Services Unit as further harassment. Plaintiff went as ordered and when he returned from Psych Services, Defendant KAVANAGH threatened Plaintiff and he stated "your making me look like an asshole" complaining to the Chief and said "how do I not know you're not going to go home and kill your wife and kids".  KAVANAGH made a statement about Plaintiff's family and then he questioned Plaintiff as to why he takes his gun home. KAVANAGH also threatened Plaintiff's work schedule.  Plaintiff immediately called Chief Gomez to complain about Defendant KAVANAGH and informed Chief Gomez that he needed to be transferred away from Defendant KAVANAGH and could not go back to the 108th Precinct under Defendant KAVANAGH's supervision.

23.    On January 11, 2010, when Plaintiff returned to work at the 108th Precinct, Defendant KAVANAGH's demeanor was very distant and hostile towards Plaintiff for having complained.

24.     Approximately in early January 2010, Plaintiff approached Chief Pizutti and asked if she was willing to transfer him to another precinct in Queens North.  Pizutti declined stating that there were no openings.

25.     On or about January 12, 2010 when there was an opening, Plaintiff went to speak with Chief Pizutti, based on his prior communication with her regarding the Queens North position, and requested to be transferred out of the 108th Precinct because it was a hostile work environment.  Chief Pizutti told Plaintiff that he "needed help" and asked Plaintiff if he wanted to leave the Borough of Queens North, to which Plaintiff responded "No", Plaintiff just wanted to go to a different Queens precinct and Queens North had a position for Captain opening for which Plaintiff was qualified and that's why Plaintiff asked for the transfer to Queens North.  Chief Pizutti denied Plaintiff's request.  Plaintiff also informed Chief Pizutti that he did not need to go for any type of psychological therapy, but rather needed time off to address a medical urological condition.

26.     On the night of January 12, 2010 Chief Pizutti called Plaintiff's cell phone and asked Plaintiff what he was scheduled to do the next day.  Plaintiff informed the Chief that he had an appointment at One Police Plaza the next day.

27.     On January 13, 2010, Plaintiff was ordered by Chief Pizutti on his cell phone to report to Psych Services the following day on January 14, 2010.

28.     On January 14, 2010, Plaintiff went to the NYPD Medical Division and was informed by one of the staff doctors, Dr. Sullivan, who received a call from someone whose identity was unknown to Plaintiff and they wanted Plaintiff to be examined. Plaintiff was found to be fit for duty and was cleared for full duty with no restrictions.  After that Plaintiff had to be interviewed by a couple of psychiatrists,  Soon thereafter, Plaintiff spoke with Chief Pizutti and

was told that he would not be leaving the 108th Precinct anytime in near future.

29.     On or about January 18, 2010, Plaintiff called the 108th Precinct to report out sick as a result of his physical urological condition.

30.     On January 18, 2010, Plaintiff reported to NYPD Medical Services in regards to his urological condition and saw Defendant DANE who kept Plaintiff out sick for at least 1 week and gave Plaintiff a pass to leave his residence. Dr. Dane told Plaintiff to see her for a follow up appointment the following week on Wednesday, January 27, 2010.

31.     On January 19, 2010, Plaintiff received a call from P.O. Philer, who is stationed at the Medical Division, and was told that Plaintiff's medical folder was a "hot potato" and that Plaintiff needed to come down to the Medical Division and see Defendant DANE.  Plaintiff also received a call that same day from the President of his Union asking Plaintiff what was going on in regards to Defendant KAVANAGH and Chief Pizutti for sending Plaintiff to Psych Services.

32.     On January 20, 2010, despite Defendant DANE having found Plaintiff to be sick on January 18, 2010 and to stay out for one week with a urological condition, Plaintiff was informed by the Dr. Dane that he had no urological problem and Plaintiff should return to work immediately.

33.     Plaintiff contacted his Union to complain and called Chief Pizutti and requested a reasonable accommodation to take two days off so that he could attend the numerous doctor appointments that he had coming up regarding his urological condition.  Said request was granted.

34.     On January 25, 2010, Plaintiff reported sick and went to the Medical Division to see Defendant DANE and was told that he was being placed back to work and "there's nothing wrong with [me]" despite the fact that he has been having documented urological problems.

Defendant DANE told Plaintiff that "Let me explain how this works, every time you go out sick I will put you back to work".

35.    Immediately after leaving Defendant DANE, Plaintiff went to speak to Chief Pizutti to complain about Defendant DANE, the NYPD doctor.  Plaintiff also spoke with Chief Pizutti and asked for some time off so he could address his medical condition.  Said request was denied.  As a result of the denial of the reasonable accommodation, Plaintiff produced a letter from his urologist placing Plaintiff out sick.   If not, Plaintiff would be forced to retire so he could take the appropriate medical steps to obtain the appropriate medical urological care.  Said request for the medical accommodation was denied in retaliation for Plaintiff's prior complaints against Defendants KAVANAGH and DANE.

36.    On January 26, 2010, as a result of Chief Pizutti denying Plaintiff's request for a leave of absence, and the continued harassment by Defendants, Plaintiff was forced to put in his papers for Terminal Leave Pending Retirement due to being constructively discharged because of the denial of the reasonable accommodations, the retaliation and hostile work environment.

37,    On June 11, 2010 Plaintiff filed charges of discrimination against Defendants based upon their unlawful, intentional pattern and practices of discrimination of Plaintiff's disability in regards to his urological illness without a reasonable accommodation and perceived psychological disability, which Plaintiff did not have nor was ever diagnosed as having, along with retaliation and the creation of a hostile work environment.

38.    As a result of the Defendants' failure to reasonably accommodate Plaintiff for his urological disability, perception of Plaintiff as being emotionally and mentally disabled, the continuous harassment and retaliatory hostile work environment for having complained about his supervisors, Plaintiff was constructively discharged and forced to retire.

39.    During the time that Plaintiff has been forced to stay out of work pending the approval of his retirement, Plaintiff had to use up most of his accrued time which would not have been utilized had Defendants given him the reasonable accommodations to attend to his medical condition.

40.    On November 4, 2010, as a result of Plaintiff successfully resolving his urological medical problem while under the care of his urologist and because of economical issues facing him and his family, Plaintiff was forced to withdraw his retirement papers and returned to work at the NYPD.

### AS AND FOR A FIRST CAUSE OF ACTION
### PERCEPTION OF DISABILITY DISCRIMINATION
### IN VIOLATION OF TITLE I OF THE AMERICANS
### WITH DISABILITIES ACT OF 1990

41.    Plaintiff re-alleges paragraphs 1 through 40 and incorporates them by reference as paragraphs 1 through 40 of this Complaint.

42.    At all relevant times, Plaintiff was perceived to have a disability within the meaning of 42 U.S.C. §12102.  More particularly, Plaintiff was perceived to be an individual with mental impairments that substantially limited one or more of his major life activities, which would have precluded his ability to continue and pursue a career in law enforcement with defendant, CITY.

**43.**    Plaintiff alleges that Defendants' each individually and in their official capacities as employees of the CITY., failed to treat Plaintiff in a manner comparable to other similarly situated perceived disabled individuals, and this constitutes discrimination against Plaintiff with respect to the terms, conditions, or privileges of employment.

### AS AND FOR A SECOND CAUSE OF ACTION
### PERCEPTION OF DISABILITY DISCRIMINATION IN
### VIOLATION OF THE REHABILITATION ACT

44.    Plaintiff re-alleges paragraphs 1 through 43 and incorporates them by reference as

paragraphs 1 through 43 of this Complaint.

45.     Plaintiff alleges that Defendants each individually and in their official capacities as employees of the CITY, discriminated against the Plaintiff because of his perceived status of being mentally disabled.

46.     Defendants intentionally acted in an outrageous and systematic pattern of perception of disability discrimination, oppression, and bad faith directed at Plaintiff in order to deprive him of his property interest in his employment.

47.     As a result of the acts of the Defendants under color of law, Plaintiff suffered emotional distress, monetary damage, loss of salary and related benefits including pension rights, and incurred expenses for pursuing the claims herein.

**AS AND FOR A THIRD CAUSE OF ACTION**
**PERCEPTION OF DISABILITY DISCRIMINATION IN**
**<u>VIOLATION OF 42 U.S.C. § 1983 AS TO THE INDIVIDUAL DEFENDANTS</u>**

48.     Plaintiff re-alleges paragraphs 1 through 47 and incorporates them by reference as paragraphs 1 through 47 of this Complaint.

49.     Plaintiff allege that Defendants each individually and in their official capacities as employees of the CITY, under color of law deprived Plaintiff of his pension and constitutional rights including the rights to enjoy freedom of speech, movement, association and assembly, to be free from deprivation of life, liberty, and property, and this was done without the equal protection of the Fourteenth Amendment, all in violation of the constitution, the law of the United States, and in violation of 42 U.S.C. § 1983.

50.     Defendants intentionally acted in an outrageous and systematic pattern of perception of disability discrimination, oppression, and bad faith directed at Plaintiff in order to deprive him of his property interest in his employment.

51.    As a result of the acts of the Defendants under color of law, Plaintiff suffered emotional distress, monetary damage, loss of salary and related benefits including pension rights, and incurred expenses for pursuing the claims herein.

## AS AND FOR A FOURTH CAUSE OF ACTION
## RETALIATION AND HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
## AS AGAINST THE CITY OF NEW YORK

52. Plaintiff re-alleges paragraphs 1 through 51 and incorporates them by reference as paragraphs 1 through 51 of this Complaint.

53. Plaintiff alleges that Defendant CITY through its agents engaged in various severe and hostile and retaliatory actions towards Plaintiff as a result of his opposition to being perceived as mentally disabled and the creation of a hostile work environment by the individual Defendants.

54. That as a result of the severe and hostile acts of the Defendant CITY through its agents, Plaintiff suffered anxiety, stress and loss of job opportunities within the NYPD.

## AS AND FOR A FIFTH CAUSE OF ACTION
## PURSUANT TO TITLE VII OF THE CIVIL RIGHTS
## ACT OF 1964 AS AMENDED AS AGAINST THE CITY OF NEW YORK

55. Plaintiff re-alleges paragraphs 1 through 54 and incorporates them by reference as paragraphs 1 through 54 of this Complaint.

56. Based upon the aforementioned facts, Defendant discriminated against Plaintiff as a result of his disability in regards to urological medical problem and in retaliation for exercising his First Amendment rights to complain of discrimination without retaliation in being denied a reasonable accommodation.

57. Defendant intentionally and willfully discriminated against and retaliated against Plaintiff by denying him a reasonable accommodation to have leave of absence in order to obtain

medical care for his urological problem and permitted Plaintiff to be discriminated against and retaliated against in his employment on account of his disability in retaliation for opposition to discrimination, thereby violating §704(A) OF Title VII of the Civil Rights Act of 1964 as amended and 42 USC §2000e-3(a).

58. No action was taken by Defendant or its agents to stop the retaliation against Plaintiff.

59. As a result of the Defendant's conduct, Plaintiff has suffered economic loss, pain, humiliation, embarrassment, and extreme emotional distress and continues to suffer to this day, and further as a result of Defendants' conduct, Plaintiff has suffered both professionally and personally.

60. Defendant in acting to deprive Plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

61. Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at Plaintiff and continuing from in or around January 2010, until this day.

62. As a result of the acts of the defendant under color of law, Plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses.

## AS AND FOR A SIXTH CAUSE OF ACTION PURSUANT TO THE NEW YORK STATE EXECUTIVE LAW §296

63. Plaintiff re-alleges paragraphs 1 through 62 and incorporates them by reference as paragraphs 1 through 62 of this Complaint.

64. Based on the foregoing, the defendants intentionally and willfully discriminated against the Plaintiff in his employment on account of his disability and perceived disability and

retaliation in violation of New York State Executive Law § 296.

65.    As a result of the defendants' actions and of the deprivations of plaintiff's rights as guaranteed under New York State Executive Law § 296.

66.    As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, Plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses.

## AS AND FOR AN SEVENTH CAUSE OF ACTION PURSUANT TO THE NEW YORK CITY HUMAN RIGHTS LAW

67.    Plaintiff re-alleges paragraphs 1 through 66 and incorporates them by reference as paragraphs 1 through 66 of this Complaint.

68.    Based on the foregoing, the defendants intentionally and willfully discriminated against the plaintiff in his employment on account of his race and national origin and retaliation in violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107.

69.    As a result of the defendants' actions and of the deprivations of plaintiff's rights as guaranteed under New York City Human Rights Law, the plaintiff has been damaged.

70.    As a result of the negligent, wrongful, careless, reckless and intentional acts of the defendants, Plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses.

## JURY TRIAL

71.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** plaintiff demands compensatory and punitive damages from these

defendants' jointly and severally, in an amount to be determined at trial, plus any and all

available statutory remedies, both legal and equitable, and interests and costs.

Dated:        Lake Success, N.Y.
              January 9, 2012

                              Respectfully submitted,

                              By: _____
                              LINDA M. CRONIN (LC 0766)
                              CRONIN & BYCZEK, LLP
                              Attorneys for Plaintiff
                              1983 Marcus Avenue, Suite C-120
                              Lake Success, NY 11042
                              516-358-1700

*EXHIBIT "A"*



**U.S. Department of Justice**

Civil Rights Division

NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
2013 0944

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

July 28, 2011

Mr. Ralph Forgione
c/o Linda M. Cronin, Esquire
Law Offices of Cronin & Byczek
Attorneys & Counselors at Law
1983 Marcus Ave., Ste. C-120
Lake Success, NY  11042

Re:  EEOC Charge Against New York City Police Department, et al.
     No. 520201002584

Dear Mr. Forgione:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:

Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and,
Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Thomas E. Perez
Assistant Attorney General
Civil Rights Division

by *Karen S. Ferguson*

Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
    New York City Police Department, et al.

Index No. 5248                    Year 20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RALPH FORGIONE,

                                                              Plaintiff,

                    - against -

THE CITY OF NEW YORK,    et al.,

                                                              Defendants.

### AMENDED COMPLAINT WITH JURY DEMAND

### CRONIN & BYCZEK, LLP
### ATTORNEYS AT LAW
### 1983 MARCUS AVENUE
### SUITE C120
### LAKE SUCCESS, NY 11042
**(516) 358-1700**

*To:*

*Attorney(s) for*

*Service of a copy of the within*                          *is hereby admitted.*

*Dated:*

                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
                              *Attorney(s) for*

## PLEASE TAKE NOTICE

☐        *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named Court on*                    *20*
ENTRY

☐        *that an Order of which the within is a true copy will be presented for settlement to the* Hon.
NOTICE OF        *one of the judges of the within named Court,*
SETTLEMENT *at*
        *on*                    *20*        *, at*                    *M.*

*Dated:*

                              **CRONIN & BYCZEK, LLP**
                              **ATTORNEYS AT LAW**
                              **1983 MARCUS AVENUE**
                              **SUITE C120**
                              **LAKE SUCCESS, NY 11042**
                              **(516) 358-1700**

*To:*