| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | FOR ONLINE PUBLICATION ONLY |

| | |
|---|---|
| RALPH FORGIONE,<br><br>                                       Plaintiff,<br><br>- versus -<br><br>THE CITY OF NEW YORK, DEPUTY INSPECTOR THOMAS KAVANAGH, DR. LEA DANN,[1] NYPD POLICE SURGEON, in their official and individual capacities,<br><br>                                       Defendants. | MEMORANDUM<br>AND ORDER<br>11-CV-5248 |

A P P E A R A N C E S

        CRONIN & BYCZEK, LLP
            1983 Marcus Avenue, Suite C120
            Lake Success, New York 11042
        By:    Rocco G. Avallone
            *Attorney for Plaintiff*

        NEW YORK CITY LAW DEPARTMENT
            100 Church Street
            New York, New York 10007
        By:    Daniel Sergio Gomez-Sanchez
            *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        Ralph Forgione brings this action for equitable relief and damages against the City of New York (the "City"), Deputy Inspector Thomas Kavanagh, and Dr. Lea Dann, alleging employment discrimination on the basis of a perceived psychological disability and actual physical disability. Defendants move to dismiss the Second Amended Complaint (the "Complaint"), and I grant in part and deny in part their motion for the reasons that follow.

---

[1]     Dann's name was misspelled as "Dane" in the original caption of the Complaint. The Clerk is respectfully directed to amend the case caption to reflect the correct spelling.

BACKGROUND

A.  *Factual Background*

According to the Complaint, the well-pleaded factual allegations of which I assume to be true on a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the dispute in this case arises from the following:[2]

On September 28, 2009, Forgione, a captain and 20-year veteran of the New York City Police Department ("NYPD"), was transferred to a new precinct. Compl. ¶¶ 14-15. Within six weeks of his transfer, his superior officer at that precinct, Kavanagh, began to "harass" him about his personal life and childhood. Compl. ¶¶ 15-16. Kavanagh erroneously believed that Forgione suffered from psychological disorders, including Post Traumatic Stress Disorder ("PTSD"), stemming from a traumatic childhood experience. Compl. ¶ 16. Although Forgione had not been having problems at work, Kavanagh told him that he needed to see a psychiatrist and needed therapy. Compl. ¶¶ 16-17. Forgione told Kavanagh that he did not suffer from PTSD or need therapy, and he immediately complained to Kavanugh's supervisor, Chief Pizutti, about "Kavanagh's harassment and creation of a hostile work environment." *Id.*

On or around Thursday, January 7, 2010, Forgione informed Kavanagh that he planned to complain to another of Kavanagh's supervisors, Chief Gomez, about Kavanagh's treatment of him. Compl. ¶ 20. Kavanagh asked Forgione what he would say to Gomez. Compl. ¶ 21. He also called Forgione a "fuck-up" and told him that he "should fucking retire." *Id.*

The next day, when Forgione arrived at Gomez's office to complain, Kavanagh told Forgione to report to the NYPD Psychological Services Unit ("PSU"). Compl. ¶ 22.

---

[2] The Complaint is far from a model of clarity. The facts set forth herein represent my best attempt at interpreting it, with ambiguities resolved in favor of Forgione.

Forgione went as told.  *Id.*  When he returned to work thereafter, Kavanagh threatened him, "threatened [his] work schedule," and told him his complaining was "making [Kavanagh] look like an asshole."  *Id.*  Kavanagh then questioned Forgione as to why he brought his gun home with him and asked, "[H]ow do I . . . know you're not going to go home and kill your wife and kids[?]"  *Id.*

Forgione immediately called Gomez to complain about Kavanagh and to request a transfer to another precinct where he would not be under Kavanagh's supervision.  *Id.*  Gomez did not grant Forgione's transfer request, and when Forgione returned to work the following Monday, January 11, 2010, Kavanagh was "distant and hostile" towards him "for having complained." Compl. ¶ 23.

Around this same period Forgione also asked Pizutti for a transfer to another precinct.  Pizutti denied his request, explaining that there were no open positions to which he could transfer.  Compl. ¶ 24.  Some time later, on or about January 12, 2010, a position opened up in another precinct and Forgione again asked Pizutti to transfer him, in light of the "hostile work environment" he encountered in his current precinct.  Compl. ¶ 25.  Pizutti told Forgione that he needed help and asked him if he wanted to leave the borough.  *Id.*  Forgione explained that he did not and that he simply wanted to transfer to an open captain position in a different precinct.  *Id.*  Pizutti again refused Forgione's request to transfer and, the next day, ordered Forgione to go to the PSU.  Compl. ¶¶ 25, 27.  Forgione complied and was found to be fit for duty.  Compl. ¶ 28.  Soon thereafter, Pizutti told Forgione he would not be leaving the 108th Precinct "anytime in [the] near future."  *Id.*

As a result of anxiety related to his interactions with Kavanagh, Forgione developed urinary incontinence at some point between November 2009 and January 2010.

3

Compl. ¶ 18.  During this period, Forgione asked Kavanagh "for a reasonable accommodation for time off so that he could take care of his medical issue," but Kavanagh refused his request. *Id.*  On January 12, 2010, Forgione asked Pizutti for the same accommodation – for "time off to address a medical urological condition."  Compl. ¶ 25.  Pizutti granted Forgione permission to take off the following day for a medical appointment.  Compl. ¶ 26.

The next week, on January 18, 2010, Forgione reported out sick in order to see a doctor at the NYPD Medical Division ("MD") about his urinary incontinence.  Compl. ¶ 29.  He met with Dann, a surgeon, who recommended that Forgione refrain from working for at least a week and return thereafter for a follow-up appointment.  Compl. ¶ 30.  The next day, however, the MD called Forgione, told him that his medical folder was a "hot potato," and ordered him to return to see Dann immediately.  Compl. ¶ 31.  Forgione did so the following day, at which time Dann informed Forgione that he had no urological problems and should return to work right away.  Compl. ¶ 32.

Forgione then contacted Pizutti and asked for a reasonable accommodation to take two additional days off to attend medical appointments for his urinary incontinence.  Compl. ¶ 33.  His request was granted, but a few days later, on January 25, 2010, when Forgione reported out sick and saw Dann again, Dann told him that there was nothing wrong with him and that every time he went out sick Dann would "put [him] back to work."  Compl. ¶ 34.

Forgione complained to Pizutti about Dann and asked for "some time off so he could address his medical condition."  Compl. ¶ 35.  Pizutti refused Forgione's request.  *Id.*  Forgione then produced a note from his urologist "placing [him] out sick" and told Pizutti he would be forced to retire if denied time off.  *Id.*  Pizutti still refused to grant his request.  *Id.*

4

As a result, on January 26, 2010, Forgione filed paperwork requesting leave pending retirement. Compl. ¶ 36. In other words, because he had a period of vacation leave accrued, he chose to utilize that vacation leave prior to retiring and enter retirement upon the exhaustion of his accrued leave. However, before Forgione exhausted his accrued leave, he resolved his urinary incontinence, withdrew his retirement paperwork, and returned to work on November 4, 2010. Compl. ¶¶ 39-40.

B.    *Procedural History*

Forgione dual-filed administrative complaints with the New York State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC") on or about June 11, 2010. Compl. ¶ 12. On July 28, 2011, the Department of Justice issued a right-to-sue letter, after more than 180 days had elapsed without resolution of Forgione's EEOC charge. Am. Compl. Ex. A.

Forgione then commenced this action, asserting claims under (1) the Americans with Disabilities Act of 1990 ("ADA" or the "Act"), 42 U.S.C. § 12101 *et seq.*; (2) the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*; (3) the New York State Human Rights Law (the "SHRL"), N.Y. Exec. Law § 290 *et seq.*; and (4) the New York City Human Rights Law (the "CHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*[3] Defendants move to dismiss the Complaint in its entirety.

DISCUSSION

A.    *Standard of Review*

On review of a motion to dismiss, I assume the truth of all well-pleaded factual allegations and draw all inferences in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*,

---

[3] Forgione also brought a claim under 42 U.S.C. § 1983 but has since withdrawn that claim. *See* Compl. ¶¶ 48-51; Pl.'s Mem. Opp. Mot. to Dismiss 11, ECF No. 20.

5

556 U.S. 662, 679 (2009).  I must grant the motion if the complaint fails to state a claim that is plausible on its face.  *Id.* at 678.  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although the plausibility standard does not require plaintiffs to show that their desired inferences are more likely than not the correct inferences to draw, the facts alleged must establish "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) (internal quotation marks omitted).

B.     *Discussion*

Forgione alleges that defendants discriminated against him on the basis of both a perceived disability and an actual disability and then retaliated against him for complaining about that discrimination, in violation of the ADA, the Rehabilitation Act, the SHRL, and the CHRL.[4]  Specifically, he contends that he was referred for psychological evaluation and subjected to a hostile work environment because of the erroneous perception that he had PTSD ("perceived disability discrimination claims"); that he was refused the reasonable accommodation of taking an indefinite period of sick leave in order to seek treatment for urinary incontinence ("actual disability discrimination claims"); and that he was denied a transfer and

---

[4] Forgione brings several of his federal claims under Title VII.  *See* Compl. ¶¶ 52-62.  However, Title VII prohibits discrimination only on the basis of "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a), not disability.  Conceding "mistake," Forgione withdraws his claims under Title VII and moves to amend the Complaint to assert these claims under the ADA and Rehabilitation Act.  *See* Pl.'s Mem. Opp. 11-12.  On consent of the parties, the Complaint is deemed so amended.  In addition, Forgione's asserts a claim under the CHRL for discrimination on the basis of race and national origin, not disability.  Compl. ¶ 68.  Forgione reports that he made a typographical error and moves to amend the Complaint to assert a CHRL claim for disability discrimination instead.  Pl.'s Mem. Opp. 16.  On consent of the parties, the Complaint is deemed amended in this respect as well.

6

sick leave, and thereby constructively discharged, in retaliation for complaining about the hostile work environment ("retaliation claims").

Before considering each set of claims individually, I address two preliminary issues. First, defendants contend that all of Forgione's Rehabilitation Act claims should be dismissed because the Complaint does not allege that the City received federal funds or was otherwise subject to the requirements of the Rehabilitation Act. Forgione fails to respond to this argument, and I thus deem his Rehabilitation Act claims abandoned and dismiss them. *See Apple v. Atl. Yards Dev. Co., LLC*., No. 11 Civ. 5550, 2012 WL 2309028, at *8 (E.D.N.Y. June 18, 2012).

Second, Forgione brings ADA claims against Kavanagh and Dann in their personal capacities. However, the ADA does not create liability for individual defendants sued in their personal capacities for employment discrimination. *See Spiegel v. Schulmann*, 604 F.3d 72, 79-80 (2d Cir. 2010) (no personal liability under anti-retaliation provision of ADA); *cf. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (no personal liability under Title II of ADA); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313-14 (2d Cir. 1995) (no personal liability under Title VII), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Accordingly, I dismiss Forgione's ADA claims against Kavanagh and Dann in their personal capacities. Insofar as the Complaint asserts claims against these defendants in their official capacities, such claims are functionally identical to claims against the City and I hereinafter consider such claims simply as claims against the City.

1.      *Perceived Disability Discrimination Claims*

As discussed above, Forgione asserts two perceived disability discrimination claims under the ADA, the SHRL, and the CHRL:  He alleges that because of defendants' perception that he had PTSD, he was (1) referred for psychological evaluation ("disparate treatment") and (2) subjected to a hostile work environment.

Defendants suggest that both of Forgione's perceived disability discrimination claims under the ADA must be dismissed because the Complaint fails to plausibly plead that Forgione was disabled within the meaning of that statute.  They argue that nothing in the Complaint raises the reasonable inference that the defendants perceived Forgione to have PTSD.

In order to assert a discrimination claim under the ADA, a plaintiff must have a "disability," as that term is used in the Act.  The ADA defines disability to mean "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment."  42 U.S.C. § 12102(1).  "An individual meets the requirement of 'being regarded as having such an impairment' if . . . he or she has been subjected to an action [otherwise prohibited by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).

According to the Complaint, Kavanagh "told [Forgione] he needed to see a psychiatrist because he perceived [Forgione] as having . . . PTSD."  Compl. ¶ 16.  This language is subject to two very different interpretations:  Either Kavanagh, silently motivated by his perception that Forgione had PTSD, told Forgione simply that he needed to see a psychiatrist *or* Kavanagh told Forgione both that he needed to see a psychiatrist and that he needed to do so because Kavanagh perceived him to have PTSD.  Because I am bound to read the Complaint in

the light most favorable to Forgione, I interpret it to allege the latter. My interpretation is buttressed by the fact that Forgione responded to Kavanagh's comment by "advis[sing] Kavanagh that he did not suffer from PTSD." *Id.* This suggests that Kavanagh indeed verbalized that he believed Forgione had PTSD. Such a statement certainly raises the reasonable inference that Kavanagh regarded Forgione as having PTSD, and I thus conclude that the Complaint plausibly pleads that Forgione was disabled within the meaning of the ADA.

      a.    *Disparate Treatment Claims*

Defendants also maintain that Forgione's disparate treatment claims – under the ADA, the SHRL, and the CHRL – fail because being referred for psychological evaluation does not constitute an adverse action that gives rise to liability. Under Title I of the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Courts have understood this language to require a plaintiff to plead that he was subject to adverse action by his employer because of his disability (in this case, perceived PTSD). *See Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591-92 (2d Cir. 2006) (discussing adverse action pleading requirement in Title VII context); *Ortiz v. Standard & Poor's*, No. 10 Civ. 8490, 2011 WL 4056901, at *2 (S.D.N.Y. Aug. 29, 2011) (equating standard for disparate treatment claim under the ADA with that under Title VII); *cf. Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223-24 (2d Cir. 2001) (holding that ADA retaliation claims are analyzed in the same way as Title VII claims).

An ADA plaintiff suffers an adverse employment action when "he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C.*

*Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. N.Y. State Dep't of Corr. Servs.*, 180 F.3d 426, 446 (2d Cir. 1999)) (discussing standard under Age Discrimination in Employment Act ("ADEA")); *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 316 (2d Cir. 1999) (holding that disparate treatment claims under ADEA and Title VII are governed by the same standards). A materially adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya*, 202 F.3d at 640 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)) (internal quotation marks omitted). "Examples of materially adverse employment actions include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities . . . .'" *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Galabya*, 202 F.3d at 640).

Forgione's two referrals for psychological evaluation do not amount to adverse action under the ADA. Although Forgione may have perceived the referrals as inconvenient and unwarranted, and although they may have carried negative connotations, they did not effect a materially adverse change in his working conditions.[5] Accordingly, I dismiss Forgione's ADA disparate treatment claim. Because a disparate treatment claim under the SHRL is analyzed using the same framework applied under ADA, *see Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006), I dismiss that claim as well.

However, the CHRL is not interpreted in lockstep with the ADA on this point. Indeed, the Appellate Division of the New York Supreme Court has explained that recent amendments to the CHRL "notified courts that (a) they had to be aware that some provisions of

---

[5] Referrals for medical evaluation that are job-related and consistent with business necessities are expressly permitted by the implementing regulations of the ADA. *See* 29 C.F.R. § 1630.14(c).

10

the City HRL were textually distinct from its State and federal counterparts, (b) *all* provisions of the City HRL required independent construction to accomplish the law's uniquely broad purposes and (c) cases that had failed to respect these differences were being legislatively overruled." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 32 (App. Div. 2009) (footnotes omitted) (emphasis in original); *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). In light of this new legislative mandate, courts have held that, in contrast to disparate treatment claims under the ADA and the SHRL, such claims under the CHRL need not challenge an employment action that was materially adverse. *See, e.g.*, *Sotomayor v. City of New York*, No. 10 Civ. 3411, 2012 WL 1889780, at *25 (E.D.N.Y. May 24, 2012); *Margherita v. FedEx Express*, No. 07 Civ. 4826, 2011 WL 5024577, at *8 (E.D.N.Y. Oct. 20, 2011); *cf. Williams*, 872 N.Y.S.2d at 34 (holding there is no materiality requirement to the adverse action element of a retaliation claim under the CHRL). Such courts have concluded that "[i]n order to make out the [adverse action] prong of a prima facie case of discrimination under the []CHRL, a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty." *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011); *accord Kerman-Mastour v. Fin. Indus. Regulatory Auth., Inc.*, 814 F. Supp. 2d 355, 366 (S.D.N.Y. 2011). In light of the broad language of the CHRL, I agree. A plaintiff who is treated worse, in a nontrivial way, because of his disability is subject to an adverse employment action for purposes of the CHRL. The employment action challenged need not be materially adverse.

Applying this standard to the Complaint and drawing all inferences in favor of Forgione, I conclude that the Complaint states a disparate treatment claim under the CHRL. Assuming that the challenged referrals were unwarranted and motivated by animus, as the Complaint alleges, Forgione has surely alleged that he was treated differently from others. And, in light of the negative connotations that a referral for psychiatric evaluation might carry, particularly in a police department where physical and mental health may be highly valued, I cannot conclude, as a matter of law, that such differential treatment is merely trivial. I thus deny defendants' motion to dismiss the CHRL disparate treatment claim.

  b. *Hostile Work Environment Claims*

Defendants contend that Forgione's hostile work environment claims must be dismissed because Forgione fails to plead the harassment he faced was sufficiently severe or pervasive. A hostile work environment is a workplace that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)) (internal citations and quotation marks omitted). Assuming that a hostile work environment claim is available under the ADA, a question which the Second Circuit has not yet answered,[6] a plaintiff "must plead facts that would tend to show that the complained of conduct:

---

[6] Defendants correctly note that the Second Circuit has yet to rule on the issue of whether or not the ADA recognizes a hostile work environment claim. *See Farina v. Branford Bd. of Educ.*, 458 Fed. Appx. 13, 17 (2d Cir. 2011) ("Even assuming, arguendo, that the ADA provides a basis for a hostile work environment claim (an issue this Court has not yet decided) . . . ."); *Bonura v. Sears Roebuck & Co.*, 62 Fed. Appx. 399, 400 n.3 (2d Cir. 2003). For the purposes of this motion, I assume that a hostile work environment claim is available under the ADA and that the standards for a Title VII hostile work environment claim apply. *See Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 150 (D. Conn. 2008) (noting that "[c]ourts which recognize hostile work environment claims under the ADA apply the same standard utilized in Title VII cases").

(1) is objectively severe or pervasive – that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability]." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)) (internal quotation marks omitted).

Whether a workplace is an unlawful hostile work environment under the ADA requires consideration of the totality of the circumstances. These include "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Harris*, 510 U.S. at 23.

Considering these and other factors, I conclude that Forgione fails to state a hostile work environment claim under the ADA. The Complaint alleges that Kavanagh made several offensive quips to Forgione about his perceived disability and told Forgione he needed to see a psychiatrist. However, these "[i]solated, minor acts or occasional episodes do not warrant relief" under a hostile environment theory. *Brennan*, 192 F.3d at 318. While Forgione alleges that Kavanagh also threatened him and his work schedule, and was distant and hostile towards him, these allegations are too vague to sustain a hostile work environment claim. Without more information about what such threats consisted of and how Kavanagh demonstrated his hostility, I cannot find that the behavior Forgione alleges was sufficiently severe to warrant relief under the ADA. Accordingly, I dismiss Forgione's ADA hostile work environment claim. Because the standard under the SHRL is identical, *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006), I dismiss Forgione's SHRL claim as well.

However, the CHRL's protections are broader than those of the ADA and the SHRL. As the Appellate Division of the New York Supreme Court has explained, the expansive remedial purpose of the CHRL suggests that a plaintiff should be able to seek relief on a hostile work environment (*i.e.*, harassment) claim without demonstrating that the harassment to which he was subjected was severe or pervasive. *Williams*, 872 N.Y.S.2d at 38. Noting that the severe-or-pervasive standard "sanction[s] a significant spectrum of conduct demeaning" to individuals with disabilities, the Appellate Division held that the a plaintiff states a claim under the CHRL when he pleads that he was "treated less well than other employees because of [his protected class]." *Id.* at 38, 40. An employer may avoid liability, by means of an affirmative defense, if "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider 'petty slights and trivial inconveniences.'" *Id.* at 41.

By alleging that Kavanagh taunted and criticized him, Forgione has adequately pleaded that he was treated less well than individuals whom Kavanagh did not regard as having a mental disability. In addition, although it is a close call, I am unable to conclude as a matter of law that Kavanagh's behavior consisted simply of petty slights and trivial inconveniences. Therefore, I deny the motion to dismiss with respect to the hostile work environment claim under the CHRL.

2. *Actual Disability Discrimination Claims*

Forgione also brings actual disability discrimination claims pursuant to the ADA, the SHRL, and the CHRL. Specifically, he alleges that he had urinary incontinence and was unlawfully denied the reasonable accommodation of taking sick leave in order to seek treatment

for this disability. Defendants contend that this claim should be dismissed because the accommodation requested, an indefinite period of leave, was not reasonable. [7]

Under the ADA, it is unlawful to refuse to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To state a reasonable accommodation claim under the ADA, a plaintiff must plead (1) that his employer is subject to the ADA; (2) that he is an individual with a disability; (3) that, with or without reasonable accommodation, he could perform the essential functions of the job – *i.e.*, that he was a "qualified individual" under the Act; and (4) that the employer had notice of the plaintiff's disability and failed to provide such accommodation. *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir. 1995).

With respect to the third element, Forgione does not suggest that he could perform the essential functions of his job without a reasonable accommodation. Indeed, he contends that without the accommodation he requested he was so unable to perform his job that he was forced to put in his retirement papers. Accordingly, Forgione must plead that he requested a reasonable accommodation that would have allowed him to perform the essential functions of his job. *See Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 8 (2d Cir. 1999) (holding that plaintiff's reasonable accommodation claim failed at summary judgment because he could not show that he could perform the essential functions of his job with a reasonable accommodation); *McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 101 (2d Cir. 2009) (holding that employer's

---

[7] Because defendants do not challenge whether Forgione's urinary incontinence constitutes a disability within the meaning of the ADA, I assume without deciding that it does solely for the purpose of this decision.

"failure to engage in a sufficient interactive process does not form the basis of a claim under the ADA . . . unless []he also establishes that . . . []he was qualified for the position at issue"). Defendants argue that Forgione's requested accommodation should be construed as a request for an indefinite period of leave and that, so construed, Forgione's claim fails because it does not constitute a reasonable accommodation that would allow him to perform the essential functions of his job.

While a request for leave may constitute a reasonable accommodation in certain circumstances, a request for an indefinite period of leave, unaccompanied by any indication that the leave would temporary, that the limitations necessitating the leave would be resolved, or that the employee would upon return be able to perform the essential functions of his job, is not a request for a reasonable accommodation under the ADA. *See Mitchell*, 190 F.3d at 9; *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759-60 (5th Cir. 1996); *Hudson v. MCI Telecomms. Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). And according to the Complaint, Forgione made just such a request: He simply asked for "some time off so he could address his medical condition." Compl. ¶ 35. Bereft of any allegations that Forgione informed the defendants of how much leave he would need, what he would do during his leave, whether and how the leave would allow him to perform the essential functions of his job, or even precisely what his disability was,[8] the Complaint fails to state a reasonable accommodation claim under the ADA. Because a reasonable accommodation claim under the SHRL is subject to the same standards, *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004), Forgione's SHRL fails as well.

---

[8] Although Forgione specifies that he has urinary incontinence, he alleges that he told the defendants only that he had a "urological" and "medical" condition. Compl. ¶¶ 25, 33, 35.

16

The CHRL provides broader protections than its state and federal counterparts in this context as well. Under the city law, a reasonable accommodation is defined to be "such accommodation that *can* be made that shall not cause undue hardship in the conduct of the [employer's] business. The [employer] shall have the burden of proving undue hardship." N.Y.C. Admin. Code § 8-102(18) (emphasis added). In other words, as the Appellate Division of the New York Supreme Court has recognized, "there are no accommodations that may be 'unreasonable' if they do not cause undue hardship." *Phillips v. City of New York*, 884 N.Y.S.2d 369, 378 (App. Div. 2009). And "there is no accommodation (whether it be indefinite leave time or any other need created by a disability) that is categorically excluded from the universe of reasonable accommodation." *Id.* Because the NYPD is capable of granting a period of indefinite leave, *see id.* (interpreting "accommodation that *can* be made" to mean accommodation that is "*capable* of being made") (emphasis added), and the Complaint's factual allegations do not, as a matter of law, suggest that doing so would cause the NYPD an undue hardship, *see id.* (finding no undue hardship on a motion to dismiss "where plaintiff is entitled to every favorable inference"), I deny the motion to dismiss Forgione's reasonable accommodation claim under the CHLR.

3.  *Retaliation Claims*

Forgione's final set of claims are retaliation claims, pursuant to the ADA, the SHRL, and the CHRL. According to the Complaint, Forgione was denied a transfer to another precinct and refused sick leave[9] in retaliation for complaining to Pizutti and Gomez about the hostile work environment to which he was subjected on the basis of his perceived disability.

---

[9] Although, as discussed above, federal and state law do not require Pizutti to have granted Forgione's request for an indefinite period of sick leave *as a reasonable accommodation*, it would be unlawful for Pizutti to have denied Forgione's request *in retaliation* for Forgione's protected activity, assuming that denying the request constituted an adverse employment action.

17

Compl. ¶¶ 35, 53. Defendants argue that these claims must be dismissed because Forgione fails to plausibly allege that his complaints constituted protected activity upon which a retaliation clam may be premised.[10]

Under the ADA, it is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state an ADA retaliation claim, a plaintiff must plead facts that would tend to show that: (1) he participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging him; and (3) there exists a causal connection between the protected activity and the adverse action. *Patane*, 508 F.3d at 115 (setting forth Title VII standard); *Lovejoy-Wilson*, 263 F.3d at 223 ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). Complaining about discrimination to a supervisor constitutes protected activity and an employer is forbidden from taking an adverse employment action against an employee in retaliation for engaging in such activity. *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992). This is true even when the conduct of which an employee complains is not in fact unlawful, as long as "he possessed a good faith, reasonable belief" that it was. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)) (internal quotation marks omitted).

---

[10] Defendants do not contest that the refusal to transfer and grant sick leave to Forgione constituted adverse employment actions. Nor do defendants suggest that Forgione has failed to plausibly allege that these adverse actions were motivated by a retaliatory motive. Accordingly, I need not and do not consider these issues.

18

Forgione has plausibly alleged that he engaged in protected activity. The Complaint states that Forgione "complained" to Pizutti about Kavanagh's "harassment and creation of a hostile work environment." Compl. ¶ 17. It also alleges that after Kavanagh ordered him to go to the PSU, threatened him, and insulted him, Forgione called Gomez "to complain about" Kavanagh. Compl. ¶ 22. Although Forgione does not provide the precise language he used when making his complaints to Pizutti and Gomez, he need not do so on a motion to dismiss. Drawing all inferences in favor of Forgione and reading these allegations in the context of the allegations of the Complaint as a whole, I understand Forgione to allege that he complained to his supervisors that Kavanagh was harassing him because Kavanagh perceived him to have PTSD. Furthermore, although the behavior of which Forgione complained was not actually unlawful under the ADA – as discussed above, Forgione has failed to plead he was subjected to a hostile work environment under the ADA – the Complaint raises the reasonable inference that Forgione had a good faith, reasonable belief that it was. Accordingly, I conclude the Complaint adequately alleges that Forgione engaged in protected activity and I deny defendants' motion to dismiss with respect to Forgione's retaliation claims under the ADA. Because retaliation claims under the SHRL are analyzed in substantially the same way as ADA claims, *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000), and because the CHRL is even more protective than the ADA, *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d at 31, I deny the defendants' motion to dismiss these claims as well.[11]

---

[11] Forgione styles his claims that defendants retaliated against him by refusing to grant him a reasonable accommodation as constructive discharge claims. Compl. ¶ 38. An employer constructively discharges an employee when he "intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). Because Forgione did not actually quit – he remains an employee of the NYPD – he was not constructively discharged.

CONCLUSION

For the reasons stated herein, the motion to dismiss is granted as to all claims under the Rehabilitation Act, as well as to the disparate treatment, hostile work environment, and reasonable accommodation claims under the ADA and the SHRL.  The motion to dismiss is denied as to all claims under the CHRL, as well as to the retaliation claims under the ADA and the SHRL.

So ordered.


John Gleeson, U.S.D.J.


Dated: September 13, 2012
      Brooklyn, New York